Herbert BROWNELL, Jr., Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff,

v.

SCHERING CORPORATION, Defendant.

Civ. A. No. 1168-52.

United States District Court
D. New Jersey.

Nov. 21, 1956.

David Schwartz, Washington, D. C., for plaintiff.

Anthony T. Augelli, Jersey City, N. J., for defendant.

Montrose H. Massler, Theodore R. Kupferman, New York City, for Hexagon Laboratories, Inc., amicus curiae.

HARTSHORNE, District Judge.

Defendant Schering Corporation moves this Court to construe its final order and decree herein, Brownell v. Schering, D.C.N.J.1955, 129 F.Supp. 879, affirmed 3 Cir., 1956, 228 F.2d 624, certiorari denied 1956, 351 U.S. 954, 76 S.Ct. 849, by advising of the meaning of the word "qualified", as it appears in paragraph 1(e) of such decree, requiring Schering "to negotiate in good faith with applicants for licenses under Article VI of the Agreement, and to make offers to and to issue licenses to qualified applicants". More specifically Schering asks this Court to determine that Hexagon Laboratories, Inc. is not such a "qualified" applicant, by reason of its letter agreement with Schering of March 29, 1954.

The situation in brief is, that prior to 1952 Schering and its corporate stock had been the property of German citizens, its property having accordingly been vested by, and in, the Director of the Office of Alien Property, commonly known as the Alien Property Custodian. In January 1952 the Alien Property Custodian accordingly issued a directive to Schering, requiring it to enter into an agreement with the Alien Property Custodian and to comply with such agreement. This agreement recited that the Schering patent in question here, together with a series of other Schering patents, was to "be made available by Schering for licensing to qualified applicants on a non-discriminatory, non-exclusive, reasonable royalty basis." In Article VI of the agreement, Schering expressly "agrees to grant to any applicant, upon written request therefor, a non-exclusive license, for manufacture in the United States to make, use and sell under" such patent, as well as under other patents. The agreement further provides, in Article VII, Definitions:

"(C) As used in Article VI of this Agreement, the word 'applicant' includes any citizen of, and any corporation, partnership, association, or business organization of any kind or nature which now or hereafter is organized under the laws of, the United States, its several states, territories, or possessions, or any country which is signatory to the

London Patent Accord of July 27, 1946, as amended; provided, that the word 'applicant' shall not be deemed to include any applicant for a license if, subsequent to the date of this Agreement, such applicant obtained from Schering a license under the same Patent or Patents and such license was cancelled by Schering in accordance with its terms."

The Directive also referred to "qualified applicants" for patent licenses. Such being the only restrictions in such agreement, as to who should be applicants for a license as to the patent in question and other similar patents, clearly those coming within the terms of the above definitions were "qualified" applicants within the meaning of such agreement and directive.

Shortly thereafter, the Alien Property Custodian filed its complaint in this Court against Schering, alleging that it had refused to comply with the above directive and agreement, claiming that same were void. The complaint requested this Court to enter its declaratory judgment as to the validity of such directive and agreement, and asked that Schering be enjoined from violating same. In the ensuing litigation Schering raised every conceivable objection to the validity of this directive and agreement. Each and all of these objections were found by the Court to be baseless, and this Court accordingly entered its final order herein July 8, 1955, adjudging, among other things, "(a) that the agreement between the parties made as of January 1, 1952, is a lawful and enforceable contract and imposes upon the defendant the obligation to perform the Agreement according to its terms and in good faith", and adding similar terms as to Schering's compliance with the directive. The order further recited "(d) that by Article VI of the Agreement defendant is required to make to applicants for licenses offers to license without qualifications or conditions not appearing in the Agreement, and not contingent upon subsequent decisions by its Board of Directors to issue licenses;

"(e) that the defendant is required to negotiate in good faith with applicants for licenses under Article VI of the Agreement and to make offers to and to issue licenses to qualified applicants * * *." Clearly the "qualified applicants" alluded to in the above agreement, directive, and order holding same valid, are identic in meaning. Clearly this meaning is that those applicants are "qualified" who meet the qualifications for applicants laid down in Article VII (C) in the above agreement, as above.

Meanwhile, after the above complaint had been filed, but previous to the decision thereon, and on March 29, 1954, Hexagon Laboratories, Inc., whose attorneys attended the hearing on this motion, but at their own request did not actively participate therein, entered into an agreement with Schering as to the patent in question. This agreement provided, among other things, that Hexagon would not infringe upon or contest such patent, and would turn over to Schering everything it had in that regard, including its "know how" as to the patent product. But the agreement further provided (paragraph 6(b)) that Hexagon "may make application to you (Schering) for a license under said patent in the event the litigation now pending (Brownell, Attorney General v. Schering) (above alluded to) is finally determined, without the right of further appeal, and such determination requires and compels you to issue licenses under said patent; provided, however, that no such application shall be made by us (Hexagon) in such event prior to December 31, 1955."

Since, as seen above, the above litigation has now resulted in a final determination "without the right of further appeal" and Schering is thereby required and compelled "to issue licenses under said patent", Schering's above agreement with Hexagon expressly authorized Hexagon to apply to Schering "for a license under said patent." The other terms of such agreement thus cannot possibly in-

terfere with Hexagon's rights otherwise to apply to Schering for a patent license.

Since Schering admits that Hexagon is a "qualified applicant" within the meaning of such terms as used in Article VII(C) of the above agreement, Hexagon is therefore a "qualified applicant" within the meaning of the final order entered by this Court in the above litigation. Accordingly Schering "is required to negotiate in good faith with (Hexagon) * * * for licenses under Article VI of the Agreement and to make offers to and to issue licenses to" Hexagon.